UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VALERIE PUCILOWSKI,

                              Plaintiff,

                    v.

SPOTIFY USA, Inc.

                              Defendant.

---

Case No. _____

**COMPLAINT**

COMES NOW the Plaintiff, Valerie Pucilowski, through her attorneys, David S. Schwartz Law, PLLC, for her Complaint against the Defendant, Spotify USA, Inc., and alleging as follows:

**NATURE OF THE CASE**

1.      Plaintiff brings claims pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 *et. seq.* ("FMLA") and the New York City Human Rights Law, NYC Admin Code 8-101 *et. seq.* ("NYCHRL") against her former employer, Spotify USA, Inc.  Plaintiff, who suffered from Major Depression and Generalized Anxiety Disorder, was unlawfully terminated mere days after returning to work from a short medical leave.  By this action Plaintiff seeks all remedies available in law and in equity.  Plaintiff demands a trial by jury.

**PARTIES**

2.       Plaintiff Valerie Pucilowski ("Ms. Pucilowski" or "Plaintiff") is a citizen of New York and resides in New York, New York.

3.      Defendant Spotify USA, Inc. ("Spotify" or "Defendant") is a Delaware corporation with its principal place of business located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007.  Spotify's New York agent for service of process is CT Corporation

System, 28 Liberty Street, New York, New York 10005.  Upon information and belief, Spotify employs 50 or more employees within 75 miles of its New York City offices.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

5.     The Southern District of New York is the proper venue for this action as a substantial part of the acts and/or omissions giving rise to Plaintiff's claims occurred in this district.

6.     This Court has supplemental over Plaintiff's claims brought under city law pursuant to 28 U.S.C. § 1367, as Plaintiff's federal and city law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

## FACTUAL ALLEGATIONS

7.     Ms. Pucilowski began working at Spotify in or about August 2017.  Her official title was User Researcher.

8.     Ms. Pucilowski was a diligent and hardworking employee who consistently received high praise from coworkers and supervisors alike.

9.     In Autumn 2018 Ms. Pucilowski was suffering from, and had been diagnosed with, major depression as well as generalized anxiety disorder and attention deficit hyperactive disorder.

10.     As the severity of Ms. Pucilowski's conditions worsened during the Autumn and Winter of 2018, she made various supervisors and co-workers at Spotify aware of her conditions.

11.     Ms. Pucilowski's immediate supervisor was Sara Belt.  Ms. Belt was one of the supervisors who Ms. Pucilowski informed regarding her medical conditions.

12.     Ms. Pucilowski requested to work from home on the occasions when she felt her disabilities made it difficult for her to be in the office.  At first this request was honored by Spotify.

13.     Regardless of whether Ms. Pucilowski was working in the office or from home, she continued to complete all her work and all of the essential functions of her position in a satisfactory manner.

14.     Upon information and belief, numerous employees at Spotify, including employees similarly situated to Ms. Pucilowski, worked from home as much as, if not more often than, Ms. Pucilowski.

15.     In or about November 2018, at a team dinner event hosted by Spotify, Ms. Pucilowski began to suffer from a severe panic attack, which caused her such immense distress and confusion that she became disoriented and hit her head.

16.     Ultimately Ms. Pucilowski was diagnosed with a concussion by a physician.  Ms. Pucilowski's concussion had a severe impact on her health and mental well-being, and, upon information and belief, amplified her major depression and generalized anxiety disorder.

17.     Ms. Pucilowski's panic attack was a symptom of her major depression and generalized anxiety disorder.

18.     Ms. Belt was made aware that Ms. Pucilowski had suffered a panic attack at the team dinner event.

19.     Following her panic attack and concussion, Ms. Pucilowski worked from home intermittently, and continued to complete all her work duties and functions in a satisfactory manner.  Spotify was aware that Ms. Pucilowski's requests to work from home were due to her medical conditions.

20.     Soon after receiving notice of Ms. Pucilowski's medical conditions, Spotify would respond by making various negative statements about her and taking negative actions against her.

21.     In or about December 2018 or January 2019, another supervisor above Ms. Pucilowski, Julie Riederer, began to make statements to Ms. Pucilowski's colleagues at Spotify that "it really affects the team when [Ms. Pucilowski] is out."  These comments by Ms. Riederer were made in a critical and derogatory manner.

22.     In another instance, Ms. Belt, while preparing to give Ms. Pucilowski a performance review, lambasted Ms. Pucilowski and stated that she needed to be a "consistent presence" in the office.

23.     Ms. Belt then told Ms. Pucilowski that Ms. Pucilowski needed to chart the days she was out, despite Spotify already having a system in place to track such absences and despite no other employee on Ms. Belt's team having to track their days this way.

24.     Ms. Riederer subsequently interrogated Ms. Pucilowski about why Ms. Pucilowski was taking time off from work, despite Ms. Pucilowski making various supervisors at Spotify aware of her medical conditions and despite Ms. Riederer having never previously been responsible for Ms. Pucilowski's attendance.

25.     In or around January 2019, Ms. Pucilowski took a week off from work due to her concussion symptoms and issues with her mental health.  Upon returning to work, Ms. Pucilowski was immediately scolded by Ms. Belt, who demanded to know why Ms. Pucilowski "took off so abruptly."  Ms. Belt then exclaimed that "sick time does not equal vacation time" in an ostensible attempt to allege that Ms. Pucilowski was using the wrong type of time off for her disabilities. Upon information and belief, Ms. Belt's statement was in fact an effort to make Ms. Pucilowski falsely believe that she was not able to take any additional days off for medical reasons.

4

26.     In or about February 7, 2019, Ms. Pucilowski's physician prepared a letter on her behalf which stated that, "[i]t is my opinion that Ms. Pucilowski has been having difficulty to the degree that has interfered with her ability of working to her usual potential.  I do believe that her prognosis is quite good and that she could likely return to that baseline after another two weeks' time."

27.     Ms. Pucilowski presented this letter to Nora Lin in Spotify's Human Resources Department.  Spotify then told Ms. Pucilowski that she could take exactly two weeks off from work.

28.     Ms. Pucilowski returned to work after two weeks.  Less than three workdays after her return, Ms. Belt ambushed Ms. Pucilowski with the news that Ms. Pucilowski was being terminated.

29.     At no point prior to her termination was Ms. Pucilowski told that her work was unsatisfactory or that her position with Spotify was in jeopardy.  Ms. Pucilowski likewise never received any major criticism of her work product or performance.

30.     In a clear attempt to capitalize on Ms. Pucilowski's mental state, Spotify presented her that same day with a separation agreement which sought to pay her a paltry two months of salary as severance.

31.     Notably, Ms. Pucilowski was told by Spotify that she would not have been permitted to take any additional leave, insinuating that even if she had she not been terminated she would not have been entitled to any further leave.  Spotify also failed to advise Ms. Pucilowski of her rights under the FMLA despite clearly being on notice that Ms. Pucilowski's rights under the statute were likely implicated.

32.     Spotify's statements and omissions to Ms. Pucilowski regarding her entitlement to medical leave, as well as its capitalizing on Ms. Pucilowski's mental state, was done with the intention to fraudulently induce Ms. Pucilowski into signing a waiver of claims against Spotify. Spotify was well aware of its unlawful conduct in terminating Ms. Pucilowski mere days after she returned from taking time off due to her disabilities.

33.     These assertions and omissions by Spotify were both material and fraudulent, and caused and induced Ms. Pucilowski into signing the waiver and release.

34.     Ms. Pucilowski relied on these assertions and omissions when agreeing to sign the waiver of claims.

35.     These assertions and omissions by Spotify were known to be false by Spotify when they were made to Ms. Pucilowski.

36.     Ms. Pucilowski's waiver of claims was not entered into knowingly and/or voluntarily.

37.     At the time she signed the waiver of claims, Ms. Pucilowski lacked the requisite mental capacity to enter into the agreement and/or understand the terms and obligations of the agreement due to her mental health conditions and/or the sudden and unjustified termination by Spotify exacerbated her mental health conditions and rendered her without the requisite capacity to enter into the agreement.

38.     Spotify interfered with Ms. Pucilowski's ability to exercise her rights to medical leave in violation of the FMLA.

39.     Spotify retaliated against Ms. Pucilowski for her requesting medical leave.

40.     Spotify's unlawful conduct was willful and was done with the knowledge that such conduct violated the FMLA and/or such conduct was committed with a reckless disregard for whether its conduct violated the FMLA.

41.     Ms. Pucilowski worked more than 1250 hours for Spotify during the twelve months prior.

42.     Spotify discriminated against Ms. Pucilowski by terminating her on the basis of her disability.

43.     Spotify terminated Ms. Pucilowski in retaliation for Ms. Pucilowski's request for a reasonable accommodation due to her disability.

44.     Spotify's discriminatory conduct has caused and continues to cause Plaintiff severe mental anguish and emotional distress.

## COUNT ONE:
## INTERFERENCE UNDER THE FMLA

45.     Plaintiff repeats and realleges each paragraph above.

46.     Plaintiff is a covered employee under the FMLA.

47.     Defendant is a covered employer under the FMLA.

48.     Plaintiff was entitled to benefits afforded by the FMLA.

49.     Plaintiff suffered from a serious medical condition as the term is defined under the FMLA.

50.     Plaintiff notified Defendant of her medical condition and her need for medical leave.

51.     Defendant interfered with Plaintiff's right to FMLA leave.

52.     Defendant's unlawful conduct was willful.

53.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

## COUNT TWO:
## RETALIATION UNDER THE FMLA

54.     Plaintiff repeats and realleges each paragraph above.

55.     Plaintiff is a covered employee under the FMLA.

56.     Defendant is a covered employer under the FMLA.

57.     Plaintiff was entitled to benefits afforded by the FMLA.

58.     Plaintiff requested medical leave.

59.     Plaintiff's request for medical leave constituted a lawful exercise of her rights under the FMLA.

60.     Defendant terminated Plaintiff within three workdays of Plaintiff's return from leave, in retaliation for Plaintiff exercising her rights under FMLA.

61.     Defendant's unlawful conduct was willful.

62.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

## COUNT THREE:
## DISCRIMINATION UNDER THE NYCHRL

63.     Plaintiff repeats and realleges each paragraph above.

64.     Plaintiff is a covered employee under the NYCHRL.

65.     Defendant is a covered employer under the NYCHRL.

66.     Plaintiff suffered from medically diagnosed disabilities which caused mental and/or psychological impairment and/or impairment of the neurological system.

67.     Alternatively, Defendant perceived Plaintiff as being disabled.

68.     Defendant discriminated against the Plaintiff on the basis of Plaintiff's disability by terminating Plaintiff due to her disability.

69.     Defendant's unlawful conduct was willful and constituted a wanton disregard for the protections afforded her under the NYCHRL.

70.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

**COUNT FOUR**
**RETALIATION UNDER THE NYCHRL**

71.     Plaintiff repeats and realleges each paragraph above.

72.     Plaintiff is a covered employee under the NYCHRL.

73.     Defendant is a covered employer under the NYCHRL.

74.     Plaintiff suffered from medically diagnosed disabilities which caused mental and/or psychological impairment and/or impairment of the neurological system.

75.     Alternatively, Defendant perceived Plaintiff as being disabled.

76.     Plaintiff engaged in protected activity under the NYCHRL by requesting a reasonable accommodation for her disabilities.

77.     Defendant terminated Plaintiff in retaliation for Plaintiff's engagement in protected activity.

78.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages.

## JURY DEMAND

79.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Valerie Pucilowski hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant as follows:

A.  Declaring that the Defendant engaged in unlawful employment practices prohibited by the Family Medical Leave Act and the New York City Human Rights Law;

B.  Awarding damages to Plaintiff for all lost wages and benefits, back pay and front pay, as well as compensatory damages, resulting from Defendant's unlawful actions;

C.  Awarding Plaintiff liquidated damages as allowed by law;

D.  Awarding Plaintiff punitive damages to punish the Defendant for its unlawful conduct;

E.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful practices.

Dated: New York, New York
       February 24, 2021

David S. Schwartz, Esq. (DS5982)
David S. Schwartz Law, PLLC
*Attorney for Plaintiff*

77 Water Street, 8th Floor
New York, NY 10005
(212) 774-9420
Dschwartz@dsslawfirm.com