UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALERIE PUCILOWSKI,

               Plaintiff,

               v.

SPOTIFY USA, INC.,

               Defendant.

**OPINION AND ORDER**

21 Civ. 1653 (ER)

Ramos, D.J.:

Valerie Pucilowski brings this action against Spotify USA, Inc., alleging violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and the New York City Human Rights Law, NYC Admin Code 8-101 *et seq*. ("NYCHRL").  Before the Court is Spotify's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Doc. 10.  Spotify argues that Pucilowski's claims are barred by a separation agreement and general release she signed after her termination.  Doc. 12 at 1.  For the reasons discussed below, Spotify's motion is GRANTED.

## I.      BACKGROUND

Pucilowski began working at Spotify in August 2017 as a User Researcher.  Doc. 1 ¶ 7.  Pucilowski alleges she was a "diligent and hardworking employee who received high praise from coworkers and supervisors alike."  *Id.* ¶ 8.  About a year after she joined Spotify, Pucilowski alleges she was diagnosed with depression, generalized anxiety disorder, and attention deficit hyperactive disorder.  *Id.* ¶ 9.  According to Pucilowski, her conditions worsened throughout the fall and winter of 2018 and she told various supervisors and coworkers—including her immediate supervisor Sara Belt—about her conditions.  *Id.* ¶¶ 10, 11.  Pucilowski alleges that

she worked from home when she felt her conditions made it difficult for her to be in the office and that, whether she was working in the office or from home, she was able to complete all her work in a satisfactory manner. *Id.* ¶¶ 12, 13.

Pucilowski alleges that in November 2018, while attending a work event, she suffered a severe panic attack, "which caused her such immense distress and confusion that she became disoriented and hit her head." *Id.* ¶ 15. According to Pucilowski, she was diagnosed with a concussion, and this concussion had a severe impact on her health and mental well-being. *Id.* ¶ 16. Pucilowski alleges that after her panic attack and concussion, she worked from home intermittently, and that Spotify knew her requests to work from home were related to her medical conditions. *Id.* ¶¶ 18, 19.

Pucilowski alleges that after receiving notice of her medical conditions, Spotify "ma[de] various negative statements about her and t[ook] negative actions against her." *Id.* ¶ 20. Specifically, Pucilowski alleges that in December 2018 or January 2019, one of her supervisors—Julie Riederer—began to make statements to Pucilowski's colleagues, telling them "in a critical and derogatory manner" that it affects the team when Pucilowski is out. *Id.* ¶ 21. Pucilowski does not specify to whom Riederer made these comments, nor does she explain how she knows Riederer made these comments. Pucilowski also alleges that Belt "lambasted" her and told her she needed to be a "consistent presence in the office" and that Riederer interrogated her about why she was taking time off from work. *Id.* ¶¶ 22-24.

Pucilowski alleges that in January 2019, she took a week off from work due to her concussion symptoms and issues with her mental health. *Id.* ¶ 25. According to Pucilowski, when she returned, she was "immediately scolded" by Belt, who demanded to know why she took off so abruptly. *Id.*

2

On February 7, 2019, Pucilowski provided Spotify with a letter from her physician stating, "It is my opinion that Ms. Pucilowski has been having difficulty to the degree that has interfered with her ability of working to her usual potential.  I do believe that her prognosis is quite good and that she could likely return to that baseline after another two weeks' time."  *Id.* ¶ 26.  Spotify then granted Pucilowski two weeks off from work.  Doc. 1 ¶ 27; Doc. 12 at 2.  Pucilowski returned to work after two weeks, on February 21, 2019.  Doc. 1 ¶ 28.  On February 25, 2019, Spotify terminated Pucilowski's employment and presented her with a separation agreement.  *Id.* ¶¶ 28, 30; Doc. 12 at 3.  According to Pucilowski, she was never told that her work was unsatisfactory and never received any major criticism of her work product or performance.  Doc. 1 ¶ 29.  Spotify allegedly did not explain why it terminated Pucilowski's employment.

Pucilowski alleges Spotify told her she would not have been allowed to take any additional leave.  *Id.* ¶ 31.  Pucilowski explains that she understood this to mean she would not be allowed any further time off even if she had not been terminated.  *Id.*  Pucilowski does not specify who told her this or when she was told.  Pucilowski also alleges Spotify failed to advise her of her rights under the FMLA, despite being on notice that her rights under the statute were likely implicated.  *Id.*  According to Pucilowski, Spotify's statements and omissions regarding her entitlement to medical leave were made "with the intention to fraudulently induce [her] into signing" the separation agreement.  *Id.* ¶ 32.

After terminating her employment and presenting her with the separation agreement, Spotify gave Pucilowski fourteen days to review the agreement before signing it and another seven days during which she could revoke her signature.  *See* Doc. 11-1 ¶¶ 18-19; Doc. 12 at 3.

The agreement provides Pucilowski with two months of her base salary plus up to two months of COBRA reimbursement in exchange for a general release of claims against Spotify. Doc. 11-1 ¶ 2.  In particular, the agreement provides that Pucilowski "release [Spotify] . . . from any and all claims, demands, controversies, liabilities and damages, debts, obligations and causes of action, of any kind or nature, including, without limitation, those arising out of or in any way connected with [her] employment or the termination thereof."  *Id.* ¶ 7.  The agreement specifically releases any rights or claims under the NYCHRL and the FMLA, among other federal and state laws.  *Id.*  The agreement also provides the following:

- "You warrant that you have read this letter agreement and have consulted counsel or had the opportunity to consult counsel about this letter agreement, you understand this letter agreement, and so you freely and knowingly enter into this letter agreement."  *Id.* ¶ 7.

- "You assume any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this letter agreement or with regard to any facts now unknown to you relating to those matters."  *Id.* ¶ 7.

- "You acknowledge that you entered into this letter agreement voluntarily, that you fully understand all of its provisions, and that no representations were made to induce execution of this letter agreement that are not expressly contained herein."  *Id.* ¶ 16.

On March 8, 2019, eleven days after she was provided with the separation agreement, Pucilowski signed it and returned it to Spotify.  Doc. 11-1 at 7.  Pucilowski does not allege that she revoked her signature.  According to Pucilowski, at the time she signed the agreement, she "lacked the requisite mental capacity to enter into the agreement and/or understand [its] terms and obligations" because of her mental health conditions and her "sudden and unjustified termination . . . ."  Doc. 1 ¶ 37.

Nearly two years after signing the agreement, on February 24, 2021, Pucilowski filed the instant complaint, alleging discrimination and retaliation under the NYCHRL and the FMLA. *See* Doc. 1.

## II.    LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Even though "a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination" to survive a motion to dismiss, "it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680) (internal alternations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III.    DISCUSSION

### a.  Consideration of the Agreement

Spotify argues that Pucilowski's claims are all barred by a release in an agreement she signed after she was terminated.  In considering a motion to dismiss under Rule 12(b)(6), a district court can consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  For a document to be incorporated by reference, "the complaint must make 'a clear, definite, and substantial reference to the document[].'"  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)).  "[L]imited quotation" of a document, *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985), or a mere passing reference to a document outside the complaint does not incorporate the document into the complaint.  *See, e.g.*, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

"Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'"  *DeLuca*, 695 F. Supp. 2d at 60 (quoting *Chambers*, 282 F.3d at 153).  Moreover, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity, accuracy, or relevance of the document.  *Id.* (citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

Here, Pucilowski did not attach the agreement to her complaint.  But she concedes in her complaint that she received and signed the agreement and she does not dispute its authenticity,

accuracy, or relevance.  Doc. 1 ¶¶ 30, 32-37.  Indeed, central to Pucilowski's complaint are her allegations that she was fraudulently induced into signing the agreement and lacked the requisite mental capacity to enter into the agreement.  *Id.*  Under these circumstances, the separation agreement, even if not incorporated by reference, is sufficiently integral to the complaint.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  The Court will therefore consider the document in the context of Spotify's motion.

### a.  Enforceability of and Defenses to the Agreement

"Under New York law, a release is governed by principles of contract law and a court should enforce a valid release by its clear terms." *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 204 (S.D.N.Y. 2001).  Federal courts likewise have "articulated a strong policy in favor of enforcing settlement agreements and releases." *See Levine v. Bd. of Educ. of City of New York*, 152 F.3d 919, 1998 WL 386141, at *2 (2d Cir. 1998) (table (citing *Ruskay v. Waddell*, 552 F.2d 392, 398 (2d Cir. 1977)).  It is thus "appropriate to grant a motion to dismiss on the basis of a binding release agreement where . . . the terms of the agreement are clear and unambiguous." *Westbrooke v. Bellevue Hosp. Ctr.*, No. 16 Civ. 9845 (RA), 2018 WL 4189514 (S.D.N.Y. August 31, 2018) (internal quotation marks and citation omitted).

When a release, like the one found in the agreement here, applies to federal discrimination claims, the Court must also find that the employee's waiver was "knowing and voluntary" under the totality of the circumstances.  *See Bormann v. AT&T Comm'n, Inc.*, 875 F.2d 399, 400-03 (2d Cir. 1989); *see also Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 121 (2d Cir. 2008).  This test "departs from ordinary contract principles" by imposing a "more rigorous and subjective voluntariness test" in deference to

Congress's purpose of "eradicat[ing] discrimination in employment." *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 129 (S.D.N.Y. 2012) (internal quotation marks and citation omitted), *aff'd*, 556 F. App'x 56 (2d Cir. 2014).  It is also "more stringent" than the voluntariness test for enforcing releases of state and local discrimination claims.  *See Loksen v. Columbia Univ.*, No. 12 Civ. 7701 (CM), 2013 WL 5549780, at *6 (S.D.N.Y. Oct. 4, 2013).  Thus, when a release is voluntary and knowing under the federal *Bormann* standard, it will necessarily be considered "knowingly and voluntarily entered [into] under the standards of New York law." *Id.*

The following list of factors guides the Court's assessment of whether a release was knowing and voluntary:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann*, 875 F.2d at 402–03 (citations omitted).  In addition, courts have considered a seventh factor—whether the employer encouraged or discouraged an employee to consult an attorney and whether the employee had a fair opportunity to do so.  *Id.* at 403.  "These factors are neither exhaustive nor must all of the factors be satisfied before a release is enforceable." *Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999).

Of these factors, the relative clarity of the agreement may be the most important, because the Court will enforce a release of claims at the motion-to-dismiss stage only when its terms are clear and unambiguous. *See generally 2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 Civ. 5773 (GEL), 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001).

Here, the agreement is clear and unambiguous:  paragraph seven plainly states that, upon signing the agreement, Pucilowski releases Spotify "from any and all claims . . . including, without limitation, those arising out of or in any way connected with [her] employment or . . . termination . . . ."  Doc. 11-1 ¶ 7.  "Courts have consistently found such language to unambiguously bar plaintiffs from later bringing any claims, including of discrimination, against former employers."  *Smith v. JPMorgan Chase*, No. 15 Civ. 808 (PAE), 2016 WL 5339548, at *6 (S.D.N.Y. Sept. 23, 2016) (collecting cases); *Kramer v. Vendome Grp. LLC*, No. 11 Civ. 5245 (RJS), 2012 WL 4841310, at *4 (S.D.N.Y. Oct. 4, 2012); *Westbrooke*, 2018 WL 4189514, at *4.  Where a release "is written in plain English," a plaintiff cannot "avoid its consequences by claiming that she did not understand its terms."  *Laramee*, 72 F. Supp. 2d at 361.

In her opposition, Pucilowski argues the agreement is unclear because it is "seven pages, written largely in legalese, and . . . is the antithesis of concise."  Doc. 13 at 5.  But, as Spotify points out, there is no support for Pucilowski's proposition that page length or concision informs clarity.  That the agreement is long does not make it unclear.  In any event, Pucilowski concedes in her opposition that "the [r]elease states that Plaintiff is waiving all claims against Spotify . . . ."  *Id.*  Her arguments that the paragraph setting out the release is ambiguous because it involves "verbose language and "runs for a full-page-and-a-half" are unavailing.  *Id.*  Pucilowski cannot ignore that the agreement explicitly releases Spotify "from any and all claims" relating to her employment and termination.  The terms of the agreement are sufficiently clear and, as a result, this factor weighs in favor of a finding that Pucilowski's waiver was knowing and willful.

At least four of the other *Bormann* factors also favor enforcing the release here.  First, as to education and business experience, Pucilowski worked as a User Researcher for Spotify for a year and a half and alleges she was a "diligent and hardworking employee who consistently

received high praise from coworkers and supervisors alike." Doc. 1 ¶¶ 7, 8. While there are no facts in the record indicating Pucilowski's education level, there is also nothing in the record that suggests she was unable to understand or assess the agreement.

Pucilowski does not allege that she lacked the education or experience needed to understand the agreement, and, in any event, a plaintiff need not have a higher education degree or substantial business experience for this factor to weigh in favor of upholding a release. *See Laramee*, 72 F. Supp. 2d at 360 (collecting cases and noting that having a high school education and secretarial position does not warrant invalidating a release). Even plaintiffs with minimal education and work experience have been found capable of understanding an agreement. *See Prunella v. Carlshire Tenants, Inc.*, 94 F. Supp. 2d 512, 516 (S.D.N.Y. 2000) (building superintendent employed for three years capable of understanding the text and ramifications of the stipulation he signed); *Bachiller v. Turn On Products, Inc.*, No. 00 Civ. 8701 (JSM), 2003 WL 1878416, at *4 (S.D.N.Y. Apr. 14, 2003), *aff'd*, 86 F. App'x 465 (2d Cir. 2004) (plaintiff, who has a High School Equivalency Diploma and who at the time her employment was terminated was an accounts payable clerk, was capable of understanding the release).

Given Pucilowski's position as well as the "high praise" she received for her work, the Court has little difficulty concluding she had sufficient intelligence and experience to be able to understand the release and assess the costs and benefits of signing it.

Second, Pucilowski had fourteen days to review the agreement before signing and another seven days after signing to revoke her signature. *See* Doc. 11-1 ¶¶ 18-19. She signed and returned the agreement eleven days after receiving it. Doc. 11-1 at 7. This is more than sufficient time to consider the agreement. *See Mandavia v. Columbia Univ.*, No. 12 Civ. 2188 (JPO), 2013 WL 2391695, at *7 (S.D.N.Y. June 3, 2013) *aff'd*, 556 F. App'x 56 (2d Cir. 2014)

(summary order) (finding plaintiff had sufficient time to review agreement where "some of [the agreement's] terms may have been known to him for nearly two weeks" and noting that a few days or even hours can also be sufficient time); *Cordoba v. Beau Dietl & Assocs.*, No. 02 Civ. 4951 (MBM), 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003) (finding four days to sign a release sufficient for plaintiff to "acquaint herself with the [r]elease's terms and make a considered decision"); *see also Kramer*, 2012 WL 4841310, at *3.

Third, in signing the agreement, Pucilowski agreed that its benefits, including two months' pay, were benefits to which she would not otherwise be entitled. *See* Doc. 11-1 ¶ 5 ("You understand that the sum of money and benefits specified in [the agreement] are being offered to you in exchange for your waiver of rights and claims . . . and that you would not otherwise be entitled to these payments or benefits."). In other words, she received consideration in exchange for her waiver, and this consideration exceeds any benefits she would have received had she not signed. While Pucilowski contends "it is not clear . . . that [she] was not otherwise entitled to the amounts" in the agreement, *see* Doc. 13 at 6, she points to no facts supporting this claim—she does not show that she would have received two months' pay had she not signed the agreement. *See Laramee,* 72 F. Supp. 2d at 361 (finding that this factor weighed in favor of the validity of a release where the "plaintiff received greater compensation than she would have been entitled to had she not signed the release"); *Dewey v. PTT Telecom Neth., US, Inc.,* No. 94 Civ. 5983 (HB), 1995 WL 542447, at *2 (S.D.N.Y. Sept. 12, 1995) (finding this factor weighed in favor of the validity of a release where the plaintiff received "one month's salary, employee benefits [,] and other benefits, even though [the plaintiffs] employment contract did not entitle her to any compensation for resigning").

Fourth, Spotify gave Pucilowski a "fair opportunity" to seek out counsel by providing her with plenty of time—fourteen days before signing—to do so. *See Bachiller*, 2003 WL 1878416, at \*3-4. And, while there is no evidence that Spotify encouraged Pucilowski to seek out counsel, Pucilowski does not allege that Spotify *dis*couraged her from doing so. In any event, in signing the agreement, Pucilowski agreed that she "consulted counsel or had the opportunity to counsel about this . . . agreement . . . ." Doc. 11-1 ¶ 7.

Two *Bormann* factors arguably favor Pucilowski here: she did not participate in drafting the terms of the agreement and she was not represented by an attorney. *See generally Bormann*, 875 F.2d at 402-03. But neither of these factors undermines this Court's conclusion that Pucilowski knowingly and voluntarily signed the agreement. *See Kramer*, 2012 WL 4841310, at \*6 (granting motion to dismiss on the basis of a release even where plaintiff did not appear to have any role in deciding the terms of the release); *see also Benson v. Nynex, Inc.*, No. 97 Civ. 2158 (WK), 2001 WL 579786, at \*3 (S.D.N.Y. May 29, 2001) (holding that the failure to participate in the drafting of an agreement "does not preclude the finding that [the plaintiff] executed the release knowingly and voluntarily"), *aff'd*, 33 F. App'x 10 (2d Cir. 2002). And, though Pucilowski was not represented by an attorney, she agreed that she "had the opportunity to consult" an attorney about the agreement, and Spotify provided her with ample time to seek one out. Doc. 11-1 ¶¶ 7, 18.

Given the clarity of the agreement, the fourteen-day period for Pucilowski to consider its terms, and the seven-day period for revoking consent, Pucilowski's lack of legal representation does not indicate that the agreement was involuntary. *See Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 200 (E.D.N. Y. 2012) (gathering cases holding that the failure to consult an attorney "does not automatically render" a release invalid), *aff'd*, 522 F.

App'x 46 (2d Cir. 2013). Thus, although Plaintiff's lack of participation in drafting the terms of the agreement and her lack of legal counsel could in other circumstances indicate that a release was involuntary, they do not shift the balance of the *Bormann* factors here, which "overwhelmingly favor" Spotify and enforcing the agreement. *See Nicholas v. Nynex, Inc.*, 929 F. Supp. 727, 732 (S.D.N.Y. 1996).

To the extent Pucilowski claims she was fraudulently induced into signing the agreement and that she lacked the mental capacity to sign the agreement, these conclusory claims are not substantiated by any facts in the complaint.  First, Pucilowski argues Spotify fraudulently induced her into signing the agreement.  Doc. 1 ¶ 32.  Specifically, Pucilowski explains she was told by Spotify that she would not have been permitted to take any additional leave, insinuating that even if she had not been terminated she would not have been entitled to any further leave. *Id.* ¶ 31.  Pucilowski also alleges Spotify failed to advise her of her rights under the FMLA.  *Id.* These statements regarding her entitlement to medical leave were, Pucilowski argues, both material and fraudulent and "induced [her] into signing the waiver and release."  *Id.* ¶¶ 32, 33.

To state a claim for fraudulent inducement under New York law, a plaintiff must allege that "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss."  *Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 622 (2d Cir. 2012), *as amended* (June 13, 2012) (summary order) (internal quotation marks and citation omitted); *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009) (stating that the fraudulent inducement elements are similar to common law fraud elements).  In addition, "the Complaint must . . . state with

particularity the circumstances of the fraud under Rule 9(b) and contain sufficient facts, accepted as true, to state claims for relief for common-law fraud that are facially plausible under Rule 8(a)(2)." *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 700–01 (S.D.N.Y. 2012). Moreover, the Second Circuit has held that a complaint, to comply with Rule 9(b), "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statement were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal citation and quotation marks omitted).

Pucilowski cannot meet these pleading requirements.  While Pucilowski claims that on the day she was terminated, she was told by Spotify that she would not be permitted to take additional leave, she does not identify the speaker, state where this statement was made, or explain why this statement was fraudulent.  Beyond this, Pucilowski does not show in her complaint or her opposition (1) how this statement—that she would not be entitled to further leave—is false, (2) that Spotify intended to deceive her in making this statement, (3) that she justifiably relied upon the statement in signing the agreement, or (4) that she sustained any loss as a result of relying upon the statement.  In other words, Pucilowski fails to plead any of the elements of fraudulent inducement.

As to her argument that she lacked mental capacity to enter into the agreement, Pucilowski alleges her mental health conditions, namely her depression, anxiety disorder, and attention deficit hyperactivity disorder, as well as the concussion she suffered three months before she was terminated, rendered her incapable of entering into the agreement.  Doc. 1 ¶ 37; Doc. 13 at 14.

14

Under New York law, a party's competence to enter into a contract is presumed, and the party asserting incapacity bears the burden of proof. *Hewett v. Leblang*, No. 12 Civ 1713 (PKC), 2012 WL 2820274, at *9 (S.D.N.Y. July 5, 2012) (internal citation and quotation marks omitted); *see also Washington v. NYC Med. Prac., P.C.*, No. 18 Civ. 9052 (PAC), 2021 WL 918753, at *6 (S.D.N.Y. Mar 10, 2021) (internal citation and quotation marks omitted) (noting the burden on a party asserting incapacity to contract is "extremely heavy"). To meet that burden, a party must prove (1) that "the mind was so affected as to render him wholly and absolutely incompetent to comprehend and understand the nature of the transaction," and (2) that the other contracting party "knew or should have known of his condition." *Washington*, 2021 WL 918753, at *6 (citing *Ortelere v. Teachers' Ret. Bd. of City of New York*, 25 N.Y.2d 196, 202-03, 205 (1969)). Beyond this, incapacity must be shown at the time of the disputed transaction. *Sun Life Assur. Co. of Canada (U.S.) v. Gruber*, No. 05 Civ. 10194 (NRB), 2007 WL 4457771, at *15 (S.D.N.Y. Dec. 14, 2007).

Here, Pucilowski cannot plausibly allege mental incapacity. As noted above, on February 7, 2019, Pucilowski provided Spotify with a letter from her physician stating Pucilowski "has been having difficulty to the degree that has interfered with her ability of working to her usual potential." Doc. 1 ¶ 26. Though Pucilowski does not specify the cause of this difficulty, the Court assumes her physician prepared this letter in light the diagnoses she received in 2018—depression, anxiety, and attention deficit hyperactive disorder—and her November 2018 concussion.

As the letter continues, "I do believe that her prognosis is quite good and that she could likely return to that baseline after another two weeks' time." *Id.* Spotify granted Pucilowski two weeks off from work and she returned on February 22, 2019. *Id.* ¶ 28. On February 25, 2019,

Spotify terminated her employment and presented her with the separation agreement.  In other words, Pucilowski's physician believed she would be able to work at her "usual potential" after taking two weeks off, and Spotify allowed her to take two weeks off.  Pucilowski does not allege any facts suggesting that she was unable to resume her work upon her return or that she was otherwise incapacitated.  In particular, Pucilowski does not point to any evidence showing that at the time she signed the agreement—on March 8, 2019, eleven days after she received it—her mind was so affected as to render her "wholly and absolutely incompetent to comprehend" the agreement.[1]  *Washington*, 2021 WL 918753, at *6 (internal citation and quotation marks omitted).  Because Pucilowski fails to allege mental incapacity, she cannot void her agreement to waive any claim against Spotify.

The Court recognizes the difficulty of addressing a multi-factor, factual inquiry at the motion to dismiss stage.  When "the balance of the *Bormann* factors tips decidedly [in the defendant's] favor," however, granting a motion to dismiss on the basis of a release is appropriate.  *See Smith*, 2016 WL 5339548, at *5; *see also Miller v. New York City Dep't of Educ.*, 71 F. Supp. 3d 376, 382 (S.D.N.Y. 2014) (finding an agreement to be knowing and voluntary at the motion to dismiss stage and rejecting plaintiff's arguments that two *Bormann* factors favored his position); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2020) (granting motion to dismiss based on release even where plaintiff not represented by an attorney).

---

[1] Beyond this, courts in this Circuit have found that diagnoses of depression and personality disorders are insufficient to render a person mentally incapable of contracting.  *See Hewett*, 2012 WL 2820274, at *8 (severe depression not a basis for incapacity); *Cardona v. Cmty Access, Inc.*, No. 11 Civ. 4129 (MKB), 2013 WL 304519, at *5 (E.D.N.Y. Jan. 25, 2015) ("Plaintiffs' assertion that they suffer from anxiety is not enough to demonstrate that they suffered from a condition that was debilitating enough to prevent them from entering into the Settlement Agreement . . . .").

Of course, courts in this District regularly deny motions to dismiss based on releases where additional factual development is necessary to assess the factors, where there are pertinent factual disputes, or where the plaintiff has otherwise plausibly alleged that the release was not knowing and voluntary.  *See, e.g., Mandavia*, 912 F. Supp. 2d at 132 (denying motion to dismiss where four *Bormann* factors supported the plaintiff's argument that the agreement was not knowingly and voluntarily executed); *Johnston v. Carnegie Corp. of New York*, No. 10 Civ. 1681 (PAC) (DF), 2011 WL 1085033, at *9 (S.D.N.Y. Feb. 24, 2011), *report and recommendation adopted*, 2011 WL 1118662 (S.D.N.Y. Mar. 23, 2011) (denying motion to dismiss where additional information was needed, a few factors weighed in favor of the plaintiff, and the parties disputed "the amount of consideration due under" the release agreement).  The relevant facts here, however, plainly favor finding the release to be knowing and voluntary as a matter of law, and Pucilowski has not plausibly alleged any facts showing otherwise.  The Court is thus able to conclude even at this stage that the release bars Pucilowski's claims.

In any event, the Court alternatively holds that Pucilowski has ratified the agreement. Under New York law, "the person claiming duress must a must act promptly to repudiate a contract or release or . . . be deemed to have waived [the] right to do so."  *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (citation omitted).  The same is true for plaintiffs claiming that their releases were procured through fraud or were unknowingly or involuntarily made, *see Smith*, 2016 WL 5339548, at *9; *Gupta v. Headstrong, Inc.*, No. 17 Civ. 5286 (RA), 2018 WL 1634870, at *4 (S.D.N.Y. Mar. 30, 2018).  Where, as here, a plaintiff challenging the release has made no attempt to "return the money she received from [defendants] in consideration for the Release," the plaintiff is "deemed to have ratified the Release and is thereby barred from challenging its validity."  *See Smith*, 2016 WL 5339548, at *9 (internal

quotation marks and citation omitted).  Pucilowski "cannot have it both ways; she cannot retain the benefit of the bargain while circumventing her own obligations thereunder."  *Id.* (internal quotation marks and citation omitted).

### b.  Leave to Amend

In Pucilowski's opposition papers, she requests leave to amend to "include additional allegations regarding her non-involvement in the setting of the terms or any negotiation of the terms in the [agreement]."  Doc. 13 at 7.  Pucilowski also requests leave to amend to include allegations relating to her argument that she repudiated the agreement when she sent a letter on January 11, 2021, *id.* at 16.

As to Pucilowski's request relating to her role in drafting the agreement, the Court already found that Pucilowski did not participate in negotiating or setting the terms of the agreement and that this *Bormann* factor cuts in her favor.  Any amendment, here, would be futile, as it would not change the Court's conclusion that, despite not participating in drafting the agreement, Pucilowski knowingly and voluntarily signed it.

As to Pucilowski's request relating to her repudiation argument, she alleges she sent a letter to Spotify, through counsel, on January 11, 2021, outlining her employment discrimination claims and stating her position that the release was invalid.  Doc. 13 at 16-17.  Even if the Court allowed Pucilowski to amend her complaint to include facts relating to this letter, the letter is insufficient to support a repudiation argument.  A plaintiff challenging a release must "act promptly" to repudiate that release, and, here, Pucilowski waited nearly two years before sending her January 11 letter.  This is too late.  *See, e.g.*, *Harless v. Rsch. Inst. Of Am.*, 1 F. Supp. 2d 235, 243 (S.D.N.Y. 1998) (plaintiff who "waited until contesting the instant motions, more than

fifteen months after he signed the Release, to assert his duress claims" had ratified the release); *Cater v. New York*, No. 17 Civ. 9032 (RWS), 2019 WL 430266, at *6 (S.D.N.Y. Feb. 4, 2019) (granting defendants' motion to dismiss where plaintiff ratified settlement agreement by failing to promptly tender back consideration).  In any event, Pucilowski still has not returned the money she received in consideration for the agreement.  A repudiation claim based on the January 11, 2021 letter—the only evidence Pucilowski sets out in her request for leave to amend—would fail and, as such, amendment would be futile.  Pucilowski is denied leave to amend.

## IV.    CONCLUSION

For the reasons explained above, Defendant's motion to dismiss is GRANTED with prejudice.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 10, and close the case.

It is SO ORDERED.

Dated:   March 21, 2022
         New York, New York

_____
                Edgardo Ramos, U.S.D.J.